J-S74039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF
PENNSYLVANIA,

       Appellant

       v.

MARQUISE NOEL

    :   IN THE SUPERIOR COURT OF
    :       PENNSYLVANIA
    :
    :
    :
    :
    :
    :
    :
    :   No. 2047 EDA 2019

Appeal from the Order Entered June 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002562-2018

COMMONWEALTH OF PENNSYLVANIA

       Appellant

       v.

MARQUISE NOEL

    :   IN THE SUPERIOR COURT OF
    :       PENNSYLVANIA
    :
    :
    :
    :
    :
    :
    :   No. 2048 EDA 2019

Appeal from the Order Entered June 18, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002563-2018

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **Filed: February 7, 2020**

---

[*] Former Justice specially assigned to the Superior Court.

In these consolidated matters,[1] the Commonwealth appeals[2] from the Order entered in the Court of Common Pleas of Philadelphia County on June 18, 2019, granting the motion to suppress cell phone site location information filed by defendant Marquise Noel (hereinafter "Noel").[3] Following a careful review, we reverse the suppression court's Order and remand for further proceedings consistent with this Memorandum.

The suppression court filed its Findings of fact and Conclusions of Law on June 21, 2019, and on June 24, 2019, the court filed an Amended

_____

[1] In accordance with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), the Commonwealth filed a timely and separate notice of appeal for each docket number. On July 22, 2019, the Commonwealth filed a notice of appeal in No. 2047 EDA 2019, in connection with Docket No. CP-51-CR-0002562-2018, wherein Noel was charged with the murder of Tafari Lawrence, conspiracy, violations of the Uniform Firearms Act, and possessing an instrument of crime (PIC). The Commonwealth also filed a notice of appeal on July 22, 2019, in No. 2048 EDA 2019 pertaining to Docket No. CP-51-CR-0002563-2018, wherein Noel was charged with the attempted murder and aggravated assault of Marcus Alexander. On October 28, 2019, the Commonwealth filed an Application for Consolidation of the matters asserting that the issues on both appeals are identical. In a *Per Curiam* Order entered on November 21, 2019, this Court granted the Commonwealth's Application and consolidated the matters on appeal.

[2] The notices of appeal filed at both docket numbers contain the requisite statement certifying that the suppression court's June 18, 2019, Order terminates or substantially handicaps the prosecution. **See** Pa.R.A.P. 311(d) (permitting Commonwealth appeal from an interlocutory order if it certifies that the order will terminate or substantially handicap the prosecution); therefore, the Commonwealth has perfected its appeals and invoked this Court's jurisdiction. **See Commonwealth v. Chism**, 216 A.3d 1133, 1136 (Pa.Super. 2019).

[3] The suppression court granted a separate suppression motion on February 14, 2019, barring the introduction into evidence of the cell phone itself along with incriminating text messages found thereon and clothing taken from Noel at the hospital. That Order is not at issue herein, **see infra**.

Statement of Findings of Fact and Conclusions of Law wherein it slightly

revised its June 21st filing and set forth the relevant Factual and Procedural

history herein as follows:

**Relevant Background and Procedural History**

On February 11, 2018, shortly before 1:58 PM, the decedent Tafari Lawrence was shot near 7500 Elmwood Avenue in the City of Philadelphia. Lawrence was pronounced dead at 2:18 PM, after he was transferred to Presbyterian Hospital.

At approximately 2:20 PM on February 11, 2019[sic], the [Noel] arrived at the same hospital after suffering a gunshot wound to his leg.[1] While at the hospital, [Noel] spoke to Philadelphia Homicide Detectives and informed them that he was shot during a robbery at the intersection of 59th Street and Baltimore Avenue. Police search of that area determined that no robbery had taken place earlier in the day.

At 3:28 PM, video surveillance from Presbyterian Hospital recorded Homicide Detectives Freddy Mole, Joseph Murray, and a third male search [Noel's] cell phone. The recording captured Detective Mole visibly pushing buttons on the phone causing a light to emit from the screen. The video further revealed that Detectives Mole and Murray examined the phone from 3:28:10 PM to approximately 3:32:14 PM, a period of approximately four minutes.

After searching the phone, Detective Murray composed an affidavit for a warrant to search [Noel's] phone, wherein he cited [Noel's] account of the nonexistent robbery at 59th Street and Baltimore Avenue as probable cause. The police determined that there were no reports of a shooting or disturbance at that location, and found [Appellant's] story to be suspect. The search warrant was approved on February 11, 7:19 PM and signed by the magistrate at 8:00 PM, less than an hour later. The search pursuant to the warrant was executed twenty minutes later, at 8:20 PM.

At a preliminary hearing held on April 3, 2018, Detective Mole testified that he had seized [Noel's] phone at the hospital, but refrained from searching the phone until after he had secured a warrant.

On October 12, 2018, [Noel] filed a Motion to Suppress. On or before December 19, 2018, [Noel's] counsel obtained and

examined surveillance video from the hospital depicting Detectives Mole and Murray conducting the above unwarranted search of [Noel's] phone.

On December 20, 2019 [sic], the Commonwealth filed a Motion to Disqualify Counsel and Law Firm From Representing [Noel] and a Motion for Continuance, alleging that defense counsel violated his duty to [Noel] with respect to the discovered surveillance video.[2] On December 21, 2018, [Noel] filed a Writ of Habeas Corpus, requesting immediate bail. On January 18, 2019, after two hearings, this [c]ourt denied the Commonwealth's Motion to Disqualify.[3] On January 22, 2019, this [c]ourt denied [Noel's] Writ of Habeas Corpus.

On February 14, 2019, during a suppression hearing before this [c]ourt, the Commonwealth declined to put on evidence. At that hearing, the Commonwealth averred that it reviewed the surveillance video, interviewed Detectives Murray and Mole, and found their accounts to be incredible. Accordingly, based on their understanding of the Pennsylvania Supreme Court's holding in ***Commonwealth v. Fulton***, 179 A.3d 475 (Pa. 2018), the Commonwealth informed this [c]ourt that it had no choice but to concede [Noel's] Motion to Suppress the contents of [Noel's] cell phone and clothing recovered on February 11, 2018. Consequently, this [c]ourt granted the defendant's Motion to Suppress with respect to both the cell phone and the clothing.

On February 25, 2019, after this [c]ourt permitted [Noel] to supplement the testimony presented at the preliminary hearing, this [c]ourt removed the lead charge of Murder generally and held the matter for court on Third-Degree Murder. On February 27, 2018, this [c]ourt granted [Noel's] Writ of Habeas Corpus pursuant to Pa.R.Crim.P. 600(B) and granted bail.[4] This [c]ourt also continued the matter for the Commonwealth to conduct additional investigation for the purpose of reestablishing probable cause to search [Noel's] cell phone via an independent source.

In the months after the February 14, 2019 listing, Detective Laura Hammond oversaw the investigation of the instant matter. On April 18, 2019, Detective Hammond obtained two search warrants for cell phone records identified pursuant to a investigation. On May 20, 2019, [Noel] filed a Motion to Preclude Cell Phone GPS or Location Data Evidence. On June 5, 2019, [Noel] submitted a Letter Brief Regarding [his] Pretrial Motions. On June 13, 2019, this [c]ourt received the Commonwealth's Response to the Defense Motion for Preclusion of Cell Site Analysis.

On June 17, 2019, this [c]ourt presided over a hearing to address [Noel's] Motion to Preclude Cell Phone GPS or Location Data Evidence. At the conclusion of that hearing, this [c]ourt continued the matter to the next day for the Commonwealth to provide this [c]ourt with case law to support the proposition that a Defendant's dishonesty alone is sufficient to warrant a finding of probable cause pursuant to a "four-corners" challenge to a search warrant.

On June 18, 2019, in lieu of submitting the requested information, the Commonwealth presented case law to support an additional argument that [Noel] lacked standing to challenge the April 18, 2019 warrant on the grounds that he did not have an ownership or privacy interest in the attendant cell phone records for the [(215) 873-]1723 device. On that same date, after hearing argument on all presented issues, this [c]ourt granted [Noel's] Motion to Preclude Cell Phone GPS or Location Data Evidence.

**Facts Contained within the April 18, 2019 Search Warrants**

On April 18, 2019, Detective Hammond submitted search warrants for the cell phone tower records associated with the 267-576-8390 and 215-873-1723 phone numbers, containing the following averments:

On February 11, 2018, police officers responded to a shooting and hospital case at the location of 75th and Elmwood Streets, and transferred two victims, Marcus Alexander and the decedent Tafari Lawrence to Presbyterian Hospital. Doctors pronounced Lawrence dead at 2:18 PM, while Alexander was treated and released. Police further discovered sixteen 9mm fired cartridge casings ("FCCs"), and nine .45 cal. FCCs. Pursuant to an autopsy, Dr. Albert Chu determined that the cause of death was multiple gunshot wounds and the manner of death was homicide.

At an unidentified date and time,[4] [Noel] arrived at Presbyterian Hospital suffering from two gunshot wounds to the

_____

[4] It is discernable from a plain reading of the Affidavit of Probable Cause that Noel was brought to Presbyterian Hospital in or around the time Alexander and Lawrence arrived there on Sunday February 11, 2018, for he is specifically referred as a third shooting victim on that day:

On Sunday, February 11, 2018, 12th District police responded to a radio call of a shooting and a hospital case at 75th and Elmwood.

right leg. [Noel] reported to police that he was shot during a robbery at the intersection of 59th Street and Baltimore Avenue. A subsequent investigation found that there was not a single report of a robbery, gunshots, hospital case, or even a disturbance at that location during the time alleged. Officers found [Noel's] explanation suspect on the basis that the shooting would have had to occur on a Sunday afternoon in a residential area.

On February 13, 2018, detectives interviewed [Noel], who stated that on the day of the shooting, he purchased food at a Checkers restaurant at 58th Street and Baltimore Avenue, and drove away from that location. [Noel] described how, as he was driving, he hit a pothole and got out of the vehicle at 59th Street

_____

Upon their arrival, officers located two male shooting victims. Victim #1, later identified as Tafari Lawrence 23BM, was lying on the highway unresponsive and suffering from multiple gunshot wounds  Victim #2, identified as Marcus Alexander 24BM, was suffering from a gunshot wound to the buttocks.  Both victims were transported to Presbyterian Hospital by police.  Victim #1, succumbed to his injuries shortly after arrival and was pronounced dead at 2:18 pm by Dr. Simms.  Victim #2 was treated and released.  The crime scene consisted of sixteen (16) 9mm fired cartridge casings and nine (9) 45 caliber cartridge casing[s] indicating that at least two different guns were fired.

On Monday, February 12, 2018, Dr. Albert Chu performed a post mortem examination on the remains of Talfari Lawrence.  Through his examination, Dr. Chu was able to ascertain that the cause of death was multiple gunshot wounds and ruled the manner of death homicide.

A third shooting victim, identified as Marquis Noel 21BM, arrived at Presbyterian Hospital suffering from two gunshot wounds to the right leg.  Mr. Noel reported to police that he was just shot during a robbery at 59th and Baltimore.  Detectives investigated this information and found that there was not a single report of a robbery, gunshots, hospital case, or even a disturbance near 59th and Baltimore around the time that Mr. Noel alleged that this happened.  The fact this was a Sunday afternoon in a residential area, makes Mr. Noel's story extremely suspect.

***See*** Application for Search Warrant and Affidavit, April 18 2019, at 2 ¶¶ 1-3.

and Baltimore Avenue to check for damage, whereupon a man attempted to rob him at gunpoint. [Noel], a former boxer, resolved to fight the assailing [sic], resulting in him sustaining two gunshot wounds. After seeing this incident, and [sic] unidentified bystander used [Noel's] vehicle to drive him to Presbyterian Hospital. [Noel] did not know the whereabouts of that individual or the vehicle.

Officers arrested [Noel] on February 11, 2018, where he remained in custody. At an unascertained time,[5] homicide detectives obtained a list of phone numbers [Noel] communicated with while incarcerated, and identified 267-325-7876, 267-266-6053, 267-902-4644 as commonly called numbers. After listening to recorded phone conversations, police determined that the individual associated with the numbers were either [Noel's] family, a paramour, or his associates. Police officers further obtained call detail records for each phone.

In April 2019, Homicide Detective John Verrecchio analyzed the call detail records for the three aforementioned numbers. Through that analysis, Detective Verrecchio identified four numbers that appeared on all three sets of call detail records, but ceased contact after 2:00 PM on February 11, 2018: 267-576-8390, 215-873-1723, 267-388-1637, and 800-483-8314. Detectives eliminated the 800-483-8314 number after determining that it was associated with an automated payment service, and eliminated the 267-388-1637 number after discovering activity on that phone after [Noel's] number was seized on February 11, 2018.

For the 267-576-8390 number, investigators identified one connection with the 267-266-6053 number, an outgoing call to the 8390 number, at 7:30 PM. Investigator[s] further identified an outgoing call from the 267-325-7876 number to the 8390

---

[5] The Affidavit of Probable Cause does include a timeframe during which these phone numbers were obtained pursuant to search warrants:

Marquis Noel was arrested on 2/11/2018 and has been in custody ever since. In an attempt to identify a cellular phone number that Marquis Noel may have had prior to his arrest, Homicide Detectives obtained a list of phone numbers with whom he is communicating with [sic] while incarcerated. . . .

**See** Application for Search Warrant and Affidavit, dated April 18 2019, at 3 ¶ 1.

number at 6:30 PM. Investigators discovered no connections between the 267-902-4644 number and the 8390 number.

Police were unable to discover any connections between the targeted 215-873-1723 number and the 267-325-7876 and the 267-266-6053 numbers. Investigators were able to identified [sic] four outgoing calls from the 267-902-4644 number and the 1723 number, made at 2:32 PM, 3:00 PM, 6:14 PM, and 6:15 PM. Each call indicated an attempt with no connections.

At the end of each warrant, the affiant described how cellular devices facilitate communication by connecting with cell towers using unique identification numbers, which are in turn documented and recorded with the date, time, duration, direction, type of connection, and cell tower the connection was facilitated to, permitting investigators to geo-locate the cellular handset during each connection. The affiant contends that this information can be used to identify the user of the device.

The affiant concludes each warrant with her attestation of her belief that sufficient probable cause exists to recover all records relating to *target number*: 267-576-8390. The Commonwealth alleges that the target phone is, in fact, the device associated with the 215-873-1723 number. [(emphasis in original)].

## Additional Facts Stipulated by the Parties at the June 17 and June 18, 2019 Hearings

The cell phone records for the device associated with the 215-873-1723 number, as provided by AT&T Wireless, listed Locus Communication as the owner of record. Locus Communications is a wireless communications company that provides discounted, pre–paid access to a third party cellular network in exchange for a user's payment of a finite amount of network time. Locus Communications itself purchases access to the AT&T network, which it in turn resells to its consumer base. The Commonwealth did not discover any information concerning Locus Communications until after it had already secured the records associated with the 1723 device.

On February 13, 2018, homicide detectives interviewed [Noel] concerning the instant shooting. Defense counsel stipulated that, during that interview, [Noel] told police that he did not possess a phone at the time of the shooting, but that he had previously used a device belonging to his mother, associated with a 267-325-8100.[5]

The Commonwealth stipulated that, if called to the stand at the instant hearing, [Noel] would have testified that he was the exclusive user of the device associated with the 215-873-1723. [Noel] would further [sic] testified that he obtained the device two to three months prior to the instant shooting and solely purchased minutes to operate the device.

This [c]ourt determines that [Noel] lied when he initially spoke to detectives on February 11 and February 13, 2018 and, at the time of the incident, he was the sole owner and exclusive user of the device associated with the 215-873-1723 number.

_____

[1]This fact was stipulated by the parties at the June 17, 2019, suppression hearing.

[2] Upon discovery of the video, defense counsel contacted the District Attorney's Office, informed them of said video, and requested to negotiate a non-trial disposition in the instant matter. The Commonwealth responded by filing the motion to disqualify counsel based on a conflict of interest between himself, his firm, and [Noel], resulting in dereliction of his duties under the Rules of Professional Conduct.

[3] After appointing separate counsel for [Noel], this [c]ourt determined that defense counsel was not derelict of duty, no conflict of interest existed, and defense counsel was qualified to continue his representation in the above-captioned matter.

[4][Noel] currently remains in custody pursuant to a pending, unrelated matter.

[5]No additional information about the 267-325-8100 device was presented at the hearing.

Suppression Court's Amended Statement of Findings of Fact and Conclusions of Law, filed 6/24/19, at 1-7.

The suppression court did not enter an order directing the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the Commonwealth did not file a concise statement. In its brief, the Commonwealth presents the following Statement of the Question Involved:

> Did the lower court err by suppressing data relating to the whereabouts of a cell phone where [Noel] abandoned any reasonable expectation of privacy in that data and, in any event, it was seized pursuant to a valid search warrant.

Commonwealth's Brief at 3. In considering this issue, we follow a clearly defined standard of review:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-253 (Pa.Super. 2016) (internal citations and quotation marks omitted).

Herein, after acknowledging, "an appellate court may disagree with me," N.T. Hearing, 6/18/19 at 46, the suppression court determined that Noel had a legitimate expectation of privacy in the cell tower records associated with number (215) 873-1723 at the time of the homicide and that, therefore, the April 18, 2019, search warrant for the cellular phone records related to that phone number had not been supported by probable cause. ***Id***. at 45-46. The court explained its reasoning behind its decision as follows:

> Based on the totality of the circumstances presented within the April 18, 2019 Affidavit, this [c]ourt determines that the Commonwealth did not establish sufficient probable case to justify

its search of the cellular phone records associated with the 215-873-1723 number. The facts presented by the Commonwealth fail to rise above the realm of mere suspicion, and cannot be used to justify its seizure of the attendant records.

Here, the affidavit describes facts and circumstances showing that, two victims, Marcus Alexander and the decedent Tafari Lawrence, arrived at Presbyterian Hospital on Sunday, February 11, 2018, whereupon Lawrence succumbed to his injuries at 2:18 OM, shortly after his arrival. The affidavit further describes how [Noel] arrived at the same hospital suffering from two gunshot wounds. The affidavit fails to indicate the date and time [Noel] arrived at the hospital.[6]

While the affidavit indicates that police officer [sic] spoke to [Noel] after his arrival at the hospital, and conducted an investigation after hearing his account of an unrelated robbery occurring at 59th Street and Baltimore Avenue, the affidavit does not indicate when the discussion between officers took place, when officers investigated the area of 59th Street and Baltimore Avenue, or what methods the investigators used to confirm their suspicion that [Noel's] account was untruthful. The affidavit further fails to indicate the time of [Noel's] arrest.

Detectives secured cell phone records from three devices [Noel] called during his incarceration, associating the numbers with [Noel's] family, associates, and a paramour. After examining those records, [detectives] identified four numbers that ceased contact after the time of the February 11, 2018, shooting. By employing a process of elimination, the Commonwealth determined that two of the phone numbers, 267-576-8390 and 215-873-1723, could be linked to [Noel's] device. Detectives used this information, coupled with their own experience of that CSLI date[sic] could reveal pursuant to an investigation, in order to secure warrants for each set of records.

The above averments, limited to four-corers analysis of the affidavit, are insufficient to demonstrate anything beyond a mere suspicion that [Noel] was involved in a criminal offense. While the affidavit establishes that [Noel] connected with three numbers at the time of his incarceration belonging to family, associates, and a paramour, it fails to identify which individual possessed which device, or how contact with these individuals was relevant to the instant homicide. Though the investigators had access to certain recordings of prison telephone conversations between [Noel] and the users of these numbers, there is no indication that any discussion concerning the instant offense occurred.

The detectives' investigation of the three identified numbers further fails to establish the likelihood of discovering relevant CSLI evidence in the targeted cell phones. As a preliminary matter, the averments in the affidavit were insufficient to identify a single number, instead the Commonwealth requests two [sic] search two unrelated cellular device records on the belief that one relates to the phone possessed by [Noel]. As the affidavit indicates, for the 8390 device, only two contacts with the investigated phone numbers were identified: one outgoing call from the 6053 device at 7:30 PM on February 11, 2018 and an outgoing call from the 7876 number on February 12, 2018 at 6:21 PM, both well after the time of the instant shooting and when the Commonwealth alleges that [Noel] was either hospitalized or in custody. The evidence relating to the targeted 1723 records is similarly lacking: the Commonwealth identifies four attempted connections on February 11, 2018 at 2:32 PM, 3:00 PM, 6:14 PM, and 6:15 PM, in the form of outgoing calls from the 4644 device. The Commonwealth further concedes that the record of each of these outgoing calls indicates an attempt without a connection. Not only does the Commonwealth again present evidence for cell phone connections occurring after the time [Noel] was identified as having been in custody, but fails to demonstrate that the evidence used to identify this particular device would even appear on that device's records. This [c]ourt further notes that the affidavit for the 1723 device records concludes by requesting to recover records pertaining to the 8390 number, not the targeted number on the affidavit.

The above evidence fails to establish probable cause as the methodology used was insufficient to identify [Noel] as the user of the device connected to the attended CSLI records, or how the CSLI records from the targeted devices would be relevant after conducting a cell site analysis of the records. Accordingly, based on the information contained within the April 18, 2019 warrants, the Commonwealth fails to carry its burden and the records are suppressed.

____

[6]The affidavit does indicate that investigators disbelieved [Noel's] account of a robbery occurring before his arrival due to the unlikelihood that such an event would go unreported on a Sunday afternoon, implying that he entered the hospital near that time.

Amended Statement of Findings of Fact and Conclusions of Law, filed 6/24/19,

at 13-15.

The Commonwealth asserts the suppression court erred as a matter of law for two reasons: "First, [Noel] affirmatively abandoned ay privacy interest that he may have enjoyed in the records in question. Second, those records were secured by means of a search warrant that was properly approved by the issuing authority." Commonwealth's Brief at 10.

In analyzing these claims, we are guided by our recent pronouncement pertaining to searches and seizures as follows:

> Once a defendant files a motion to suppress evidence, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights. **Commonwealth v. Wallace**, 615 Pa. 395, 42 A.3d 1040, 1047–48 (2012) (citing Pa.R.Crim.P. 581(H)). When this Court reviews a ruling on a motion to suppress, our standard of review is well settled: we are bound by the suppression court's factual findings that are supported by the record but we review its legal conclusions *de novo*. **Commonwealth v. Cooley**, 632 Pa. 119, 118 A.3d 370, 373 (2015). "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by [the defendant]." **Commonwealth v. Fulton**, 179 A.3d 475, 487 (Pa. 2018) (citation omitted).

> ***

> Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution "guarantee individuals freedom from unreasonable searches and seizures." **Commonwealth v. Bostick**, 958 A.2d 543, 550 (Pa. Super. 2008) (citation omitted). In Pennsylvania, a defendant charged with a possessory offense has "automatic standing" to pursue a suppression motion under Rule 581. **Commonwealth v. Enimpah**, 630 Pa. 357, 106 A.3d 695, 698 (2014). However, in addition to standing, "a defendant must show that he had a privacy interest in the place invaded or thing seized that society is prepared to recognize as reasonable." *Id.* "The expectation of privacy is an inquiry into the validity of the search

or seizure itself; if the defendant has no protected privacy interest, neither the Fourth Amendment nor Article I, § 8 is implicated." ***Id.*** at 699.

This Court has found that an expectation of privacy will exist when the individual exhibits an actual or subjective expectation of privacy and that expectation is one that society is prepared to recognize as reasonable. ***Commonwealth v. Jones***, 874 A.2d 108, 118 (Pa. Super. 2005). In determining whether a person's expectation of privacy is legitimate or reasonable, we must consider the totality of the circumstances and the determination "ultimately rests upon a balancing of the societal interests involved." ***Commonwealth v. Peterson***, 535 Pa. 492, 636 A.2d 615, 619 (1993) (citations omitted). "The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances." ***Commonwealth v. Viall***, 890 A.2d 419, 422 (Pa. Super. 2005) (citation omitted).

Generally, the Fourth Amendment requires that law officers obtain a warrant before they intrude into a place of privacy; however, an exception to the warrant requirement exists when the property seized has been abandoned. ***Commonwealth v. Clark***, 746 A.2d 1128, 1133 (Pa. Super. 2000). "[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." ***Commonwealth v. Dowds***, 563 Pa. 377, 761 A.2d 1125, 1131 (2000). Simply put, "no one has standing to complain of a search or seizure of property that he has voluntarily abandoned." ***Commonwealth v. Shoatz***, 469 Pa. 545, 366 A.2d 1216, 1220 (1976).

Our Supreme Court has explained, "abandonment of a privacy interest is primarily a question of intent and may be inferred ***from words spoken***, acts done, and other objective facts." ***Dowds***, 761 A.2d at 1131. "All relevant circumstances existing at the time of the alleged abandonment should be considered." ***Shoatz***, 366 A.2d at 1220. "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." ***Id.***

- 14 -

***Commonwealth v. Kane***, 210 A.3d 324, 329–31 (Pa.Super. 2019) (emphasis added), *appeal denied*, 218 A.3d 856 (Pa. 2019).

With regard to the device associated with the 215-873-1723 number, in its Amended Statement of Findings of Fact and Conclusions of Law, the suppression court "determine[d] that [Noel] lied when he initially spoke to detectives on February 11 and February 13, 2018." Amended Statement of Findings of Fact and Conclusions of Law, 6/24/19, at 8. In fact, the record reflects that when being questioned at the Homicide Division on February 13, 2018, Noel specifically had denied ownership of **any** cell phone at the time of the homicide, and, instead, acknowledged only that he paid a bill for a cell phone in his mother's name with the number (267) 325-8100. N.T., 6/18/19, at 18.

Yet, in granting Noel's motion to suppress, the suppression court focuses on the Commonwealth's argument that Noel lacked a privacy interest in the records because Locus Communications, a prepaid telecommunications provider, was listed as the subscriber instead of Noel. The Commonwealth posits that even assuming *arguendo* that the suppression court had been correct to reject its line of reasoning at the suppression hearing that Noel lacked a reasonable expectation of privacy in the 1723 phone from the outset because its owner was a prepaid telecommunications provider Lotus Communications, that conclusion does not foreclose the prosecutor's additional point that Noel could claim no reasonable expectation of privacy in

- 15 -

the phone records retrieved from it *after* Noel had denied any association with the 1723 phone in question. Commonwealth's Brief at 14 (citing N.T., 6/18/19, at 22).[6] The Commonwealth contends this is "particularly true given that the new request for records-unlike the initial search-did not involve a physical intrusion into his personal effects and was performed by a detective who had nothing to do with any prior misconduct." Commonwealth's Brief at 15. We agree.

> "[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has **meaningfully abdicated his control, ownership or possessory interest**." ***Commonwealth v. Dowds***, 563 Pa. 377, 761 A.2d 1125, 1131 (2000). Simply put, "no one has standing to complain of a search or seizure of property that he has voluntarily abandoned." ***Commonwealth v. Shoatz***, 469 Pa. 545, 366 A.2d 1216, 1220 (1976).

---

[6] The Commonwealth stresses that it:

> [d]id not oppose [Noel's] motion to suppress text messages retrieved from the 1723 phone after determining that Detective Mole had seized a bag containing [Noel's] personal effects, retrieved the phone from inside it, illegally searched the phone, and testified falsely about doing so [at] a preliminary hearing. But the Commonwealth did not take a position with respect to the discrete issue of whether [Noel] had a protected privacy interest in cell site location data. Nor should the Commonwealth be condemned for seeking to ensure that a murder may be successfully prosecuted. Rather, the Commonwealth has done its best to uphold its obligations to the criminal justice system under unfortunate circumstances.

Brief for Appellant at 14-15, n. 5.

*Commonwealth v. Kane*, 210 A.3d 324, 330 (Pa.Super. 2019) (emphasis added), *appeal denied*, 218 A.3d 856 (2019).

In *Commonwealth v. Fulton*, 645 Pa. 296, 179 A.3d 475 (2018), the Pennsylvania Supreme Court held that a warrantless search of any information from a cell phone violates the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, because one's expectation of privacy is in the cell phone itself, not in each individual piece of information stored therein. *Id* at 319, 179 A.3d at 489, **see also** *Commonwealth v. Bowens*, 2020 WL 255335 (Pa.Super. Jan 17, 2020). Notwithstanding, "[w]hile the Pennsylvania Constitution affords greater protection against unreasonable search and seizure than the Federal Constitution…, it does not afford an individual a legitimate expectation of privacy in the telephone bills of a third party. . . ." *Commonwealth v. Benson*, 10 A.3d 1268, 1273 (Pa.Super. 2010), appeal denied, 611 Pa. 645, 24 A.3d 863 (2011).

Because Noel claimed he did not own a telephone at the time of the homicide, he abandoned any legitimate expectation of privacy he may have had in the location data associated with the phone numbers at issue as he could have had no connection to them. Only following their independent investigation and after securing a search warrant did police obtain the cell-site location information from a telephone network and analyze phone records of phone numbers assigned to third parties who Noel regularly called while he

was in prison, each of which had the phone number ending in 1723 in common. Notwithstanding, the suppression court reasons that:

> the Commonwealth is requesting that both sides of the same coin appear face up when analyzing [Noel's] privacy interest in the instant phone records. On one hand, [Noel's] possession, use, and ownership interest of a telecommunications device informs the relevance of the records in the instant matter. On the other hand, the lack of that exact same ownership interest should be interpreted to prevent [Noel] from defending on any constitutional privacy grounds. Clearly, these mutually exclusive positions cannot be permitted to co-exist with respect to the same evidence. Either the Commonwealth contends that [Noel] does not have an ownership interest, and concedes the records' irrelevance, or the records' relevance with respect to [Noel] derives from his ownership interest in that information. A hybrid combination of two juxtaposed premises and conclusion veers into the realm of intellectual dishonesty and convoluted legal precedent.

Amended Statement of Findings of Fact and Conclusions of Law, 6/24/19, at 11-12.

To the contrary, the issue of Noel's ownership interest, or lack thereof, in a telecommunications device is distinct from the cell-site location information obtained from a search of three other devices with which Noel had contact while incarcerated. Certainly, Noel cannot claim he had an expectation of privacy in the calls he made from prison, nor has he proven he has a reasonable expectation of privacy in the phone records of telephones owned by third parties; it is they who would receive and have the obligation to pay the telephone bills containing the records of telephone numbers dialed, including the numbers ending in 1723 and 8390. *see Benson*, *supra* at 1273 (finding that where a third party owned the phone and bore the responsibility

of paying the bills containing the call records in question, the appellant did not

have an expectation of privacy in those records, nor did he have a legal right

to control access to information from the telephone company).

Moreover, the potential relevance of these phone records at the time of

trial is not foreclosed by the Commonwealth's earlier concession that

Detectives Mole and Murray performed an illegal search of a cell phone in

Noel's possession at the hospital, as the suppression court acknowledges:

> While the Commonwealth failed to demonstrate probable cause in this matter, this [c]ourt agrees in principal that a novel search of [Noel's] prison phone calls could, in theory, be used to identify relevant evidence wholly independent from any other method, illegal or otherwise, to secure CSLI data. Here, the Commonwealth employed two separate detectives who were previously uninvolved in the instant investigation to secure evidence without using any data or information obtained from the suppressed cell phone. This type of investigation is sufficiently separate and attenuated to invoke the independent source doctrine.
>
> [Noel] further alleges that by virtue of the suppression of the recovered cell phone, any CSLI derived from the attendant phone records must similarly be excluded, as the suppression of the phone precludes any and all data relating to that phone. [Noel's] own legally sound averment contained in his suppression motion precludes this [c]ourt from reaching such a conclusion. As [Noel] correctly states, the Supreme Court of the United States' holding in **Carpenter [v. United States**, 138 S.Ct. 2206 (2018)] requires that government investigators obtain a warrant supported by probable cause before securing CSLI records. **Carpenter**, 138 S.Ct. at 2221.[7] This requirement is distinctive

---

[7] As this Court recently stressed, "the High Court in **Carpenter** emphasized that its decision was a narrow one and did not extend to matters not before it." **Commonwealth v. Pacheo**, 2020 WL 400243, at *7 (Pa.Super. Jan. 24, 2020) (applying the analysis in **Carpenter** which dealt with historical cell site location information to real-time CSLI tracking and holding an individual

from an investigator's obligation to secure a warrant to search a physical phone, a clear and obvious requirement. By virtue of this distinction, this [c]ourt concludes that cell phone records and attendant CSLI searches can, theoretically, be supported by a wholly separate finding of probable cause unrelated to the evidence supporting the search of a physical phone. Accordingly, the suppression of a mobile device cannot automatically preclude the discovery of the related phone records.

Amended Statement of Findings of Fact and Conclusions of Law, filed 6/24/19, at 16-17.

Even were we to have found Noel has demonstrated a legitimate expectation of privacy in the cell-site location data at issue, his claim would fail, for Detective Hammond protected such interest by securing a search warrant before obtaining that information.

As this Court recently reiterated,

Both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania safeguard individuals from unreasonable governmental intrusions into the privacy of their homes. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation ...." U.S. Const. Amend. IV. Similarly, Article I, § 8 of the Constitution of the Commonwealth of Pennsylvania provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

retains a legitimate expectation of privacy in the record of his movements captured through real-time cell-site location information).

To determine if probable cause exists, courts employ the "totality-of-the-circumstances approach ...." ***Gates***, 462 U.S. at 230, 103 S.Ct. 2317. Under this test, the Supreme Court of the United States explained:

the probable cause standard is ... a practical, nontechnical conception. In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Our observation in ***United States v. Cortez***, 449 U.S. 411, ... (1981), regarding "particularized suspicion," is also applicable to the probable cause standard ... probable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.

\* \* \* \* \*

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

***Id.*** at 231–32, 238, 103 S.Ct. 2317 (some punctuation and citations omitted).

***Commonwealth v. Batista***, 219 A.3d 1199, 1202–03 (Pa.Super. 2019)

(footnote omitted).  In addition,

"[i]t is a fundamental rule of law that a warrant must name or describe with particularity the property to be seized and the person or place to be searched[;]" this particularity requirement prohibits both a warrant that is not particular enough and a warrant that is overbroad. ***Commonwealth v. Dougalewicz***, 113 A.3d 817, 827 (Pa. Super. 2015) (citation omitted). A warrant that is not particular enough "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize[,]"

resulting in "the general 'rummaging' banned by the Fourth Amendment." *Id.* An overbroad warrant "authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation[,]" and "is unconstitutional because it authorizes a general search and seizure." *Id.*

However, search warrants should "be read in a common sense fashion and should not be invalidated by hypertechnical interpretations. This may mean, for instance, that when an exact description of a particular item is not possible, a generic description will suffice." *Commonwealth v. Rega*, 593 Pa. 659, 933 A.2d 997, 1012 (2007) (quoting Pa.R.Crim.P. 205 cmt.). Accordingly, "where the items to be seized are as precisely identified as the nature of the activity permits ... the searching officer is only required to describe the general class of the item he is seeking." *Id.* (citation omitted). Importantly, "[b]ecause the particularity requirement in Article I, Section 8 is more stringent than in the Fourth Amendment, if the warrant is satisfactory under the Pennsylvania Constitution it will also be satisfactory under the federal Constitution." *Commonwealth v. Orie*, 88 A.3d 983, 1003 (Pa. Super. 2014).

*Kane*, *supra* at 332-33.

Herein, the suppression court held the April 18, 2019, warrant was issued without the requisite probable cause. The court summarizes the averments set forth in the affidavit of probable cause underlying the warrant as follows:

[T]he affidavit describes facts and circumstances showing that, two victims, Marcus Alexander and the decedent Tafari Lawrence, arrived at Presbyterian Hospital on Sunday, February 11, 2018, whereupon Lawrence succumbed to his injuries at 2:18 PM, shortly after his arrival. The affidavit further describes how [Noel] arrived at the same hospital suffering from two gunshot wounds. The affidavit fails to indicate the date and time [Noel] arrived at the hospital.[6]

While the affidavit indicates that police officer [sic] spoke to [Noel] after his arrival at the hospital, and conducted an investigation after hearing his account of an unrelated robbery occurring at 59th Street and Baltimore Avenue, the affidavit does

not indicate when the discussion between officers took place, when officers investigated the area of 59th Street and Baltimore Avenue, or what methods the investigators used to confirm their suspicion that [Noel's] account was untruthful. The affidavit further fails to indicate the time of [Noel's] arrest.

Detectives secured cell phone records from three devices [Noel] called during his incarceration, associating the numbers with [Noel's] family, associates, and a paramour. After examining those records, [sic] identified four numbers that ceased contact after the time of the February 11, 2018, shooting. By employing a process of elimination, the Commonwealth determined that two of the phone numbers, 267-576-8390 and 215 873-1723, could be linked to [Noel's] device. Detectives used this information, coupled with their own experience of what CSLI date [sic] could reveal pursuant to an investigation, in order to secure warrants for each set of records.

The above averments, limited to four-corners analysis of the affidavit, are insufficient to demonstrate anything beyond a mere suspicion that [Noel] was involved in a criminal offense. While the affidavit establishes that [Noel] connected with three numbers at the time of his incarceration belonging to family, associates, and a paramour, it fails to identify which individual possessed which device, or how contact with these individuals was relevant to the instant homicide. Though the investigators had access to certain recordings of prison telephone conversations between [Noel] and the users of these numbers, there is no indication that any discussion concerning the instant offense occurred.

The detectives' investigation of the three identified numbers further fails to establish the likelihood of discovering relevant CSLI evidence in the targeted cell phones. As a preliminary matter, the averments in the affidavit were insufficient to identify a single number, instead the Commonwealth requests two [sic] search two unrelated cellular device records on the belief that one relates to the phone possessed by [Noel]. As the affidavit indicates, for the 8390 device, only two contacts with the investigated phone numbers were identified: one outgoing call from the 6053 device at 7:30 PM on February 11, 2018 and an outgoing call from the 7876 number on February 12, 2018 at 6:21 PM, both well after the time of the instant shooting and when the Commonwealth alleges that [Noel] was either hospitalized or in custody. The evidence relating to the targeted 1723 records is similarly lacking: The Commonwealth identifies four attempted connections on February 11, 2018 at 2:32 PM, 3:00 PM, 6:14 PM, and 6:15, PM in the form of outgoing calls from the 4644 device. The

Commonwealth further concedes that the record of each of these outgoing calls indicates an attempt without a connection. Not only does the Commonwealth again present evidence for cell phone connections occurring after the time [Noel] was identified as having been in custody, but fails to demonstrate that the evidence used to identify this particular device would even appear on that device's records. This [c]ourt further notes that the affidavit for the 1723 device records concludes by requesting to recover records pertaining to the 8390 number, not the targeted number of the affidavit.

The above evidence fails to establish probable cause as the methodology used was insufficient to identify [Noel] as the user of the device connected to the attended CSLI records, or how the CSLI records from the targeted devices would be relevant after conducting a cell site analysis of the records. Accordingly, based on the information contained within the April 18, 2019 warrants, the Commonwealth fails to carry its burden and the records are suppressed.

___

[6] The affidavit does indicate that investigators disbelieved [Noel's] account of a robbery occurring before his arrival due to the unlikelihood that such an event would go unreported on a Sunday afternoon, implying that he entered the hospital near that time.

Amended Statement of Findings of Fact and Conclusions of Law, 1/24/20, at 13-15.

Upon careful review of the uncontradicted facts and applicable law, we conclude the trial court erred by finding a lack of probable cause to support the search warrant at issue. In doing so, it focused almost exclusively on what it deemed to be missing from the Affidavit of Probable Cause, instead of examining the totality of circumstances as set forth therein as required.

For example, the suppression court stressed that Detective Hammond did not provide a time-frame pertaining to when Noel arrived at Presbyterian

Hospital, the manner in which officers inquired about the robbery, or when Noel had been arrested. However, as stated previously, **see** fn. 4, **supra**, the Affidavit of Probable Cause does indicate that "Victim #1" and "Victim #2" arrived at Presbyterian Hospital on Sunday, February 11, 2018, suffering from gunshot wounds and that "a third shooting victim," Noel, also arrived suffering from multiple gunshot wounds and claiming to have been involved in a robbery at 59th and Baltimore. Thereafter, the Affidavit states investigating officers sought and found no report of a "robbery gunshots, hospital care or even a disturbance at 59th and Baltimore around the time Noel alleged the incident happened." Affidavit of Probable Cause, 4/18/19, at 2. The Affidavit adds that "Noel was arrested on 2/11/2018 and has been in custody ever since." **Id**. at 3 ¶ 1.

While there are no specific times accompanying each of the aforementioned occurrences, a common sense reading of the narrative suggests Noel arrived at Presbyterian Hospital shortly after Messrs. Lawrence and Alexander on Sunday, February 11, 2018, at which time he informed officers he had been involved in a burglary at 59th and Baltimore, and officers then made their inquiry into the alleged burglary on that date. As no report of any disturbance at 59th and Baltimore had been made on that Sunday afternoon, officers found his story "extremely suspect" and placed him under arrest on February 11, 2018.

The suppression court also avers that the Affidavit of Probable Cause is devoid of allegations that the call detail records for numbers with which Noel communicated while incarcerated will reveal relevant information. On February 13, 2018, during an interview with police, Noel supplied additional details about the alleged robbery, which cast further doubt upon his prior version the events of February 11, 2018. Noel explained that while he was being robbed by an unknown male, a second unknown male approached him, offered him help and drove him to the hospital in Noel's vehicle. Noel had no information regarding man's identity, nor did he know the man's whereabouts or that of his vehicle. *Id*. at 2. Their suspicions about Noel's involvement in the shootings heightened, "Homicide Detectives obtained a list of phone numbers with whom he is communicating with [sic] while incarcerated." *Id*. at 3, ¶ 1. The Affidavit specifies that in light of the call activity observed while Noel had been incarcerated, the 1723 and 8390 numbers "are possible phone numbers that may be attributed to [Noel]." *Id*. at 4. The Affidavit also states that the "cell tower/sector information" can be used to "provide information used to identify the number that the device is communicating with during each connection which can be used to ultimately identify the person(s) that the user of the target device is communicating with." *Id.*

Doubting Noel's veracity and believing that it was likely he had been involved in the shootings of Messrs. Lawrence and Alexander, Detective Hammond, who had numerous years' experience investigating homicides and

experience with cellular handsets, requested the call detail records in an effort to ascertain whether wither the 267-576-8390 or 215-873-1723 phone numbers could be associated with Noel. *Id*. at 4. If so, such information could be utilized to ascertain Noel's whereabouts at the time of the shootings.

While we agree with the suppression court that page four of the Affidavit mentions only the 8390 number as the "target number," pages one and three thereof list the 1723 number as a second target number. *Id*. at 1, 3-4. As such, the suppression court's focus on the substance of Noel's conversations and the identity of the individuals with whom he spoke is inapposite, for Detective Hammond sought the warrant in an effort to ascertain Noel's connection, if any, to the target phone numbers and to discern whether either number had been in the vicinity of the crime scene on February 11, 2018.

Thus, even had Noel's privacy rights been implicated, we would conclude that the trial court erred as a matter of law in suppressing the evidence, as the search warrant was based on a showing of probable cause and issued in accordance with the Fourth Amendment.

Order reversed. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/20