J-S12035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRALE GEROME HILL-PRICE | : | |
| | : | |
| Appellant | : | No. 953 MDA 2022 |

Appeal from the PCRA Order Entered June 22, 2022
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003334-2019

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED: JUNE 12, 2023**

Tyrale Gerome Hill-Price appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"). ***See*** 42 Pa.C.S. §§ 9541-9546. In his petition, Hill-Price avers that plea counsel provided him with ineffective assistance, contending that counsel neglected to file a suppression motion that Hill-Price believes would have been meritorious. After conducting a hearing, the PCRA court concluded that plea counsel's suppression motion would have failed on its merits and, too, that counsel had a reasonable basis for not having filed said motion. We find that Hill-Price failed to demonstrate that plea counsel provided him with ineffective assistance and affirm.

By way of background, Hill-Price pleaded guilty to being an accomplice

_____

* Retired Senior Judge assigned to the Superior Court.

to third-degree murder and engaging in a criminal conspiracy to commit robbery stemming from the shooting death of Rhyhiem Hodge.[1] For these offenses, Hill-Price received an aggregate term of incarceration amounting to twenty to fifty years of imprisonment.

As outlined in the grand jury indictment of Hill-Price,

> On Sunday, November 12, 2017, at approximately 3:12 p.m., members of the Carlisle Police Department were dispatched to reports of shots fired at 278 West North Street, a corner apartment building in the Carlisle Borough. Upon arrival, Detective Thomas Dolan discovered Rhyhiem Dwaine Hodge deceased with multiple gun shot wounds lying in the kitchen, near the rear door of the residence. …

> * * *

> [Prior to Hodge's death, the shooter was permitted inside of the apartment under the pretense of consummating a transaction involving the sale of marijuana. At some point, the shooter put a 10 millimeter handgun to the head of one of the individuals in the apartment. Thereafter, Hodge reached for his own firearm and charged at the shooter. The shooter fired several shots at Hodge, hitting him multiple times. During the struggle, Hodge was able to grab a kitchen knife from the counter, stabbing the shooter in the thigh and causing a significant amount of bleeding. The shooter fled the apartment and went into a Kia automobile that was parked nearby.]

> * * *

> Based on witness accounts as well as crime scene processing, the Carlisle Police were able to determine that the black male who attempted to rob and [who] subsequently shot and killed Rhyhiem Hodge, was also seriously injured. … Detective Gibney, who was working a security detail at the Harrisburg Hospital located on South Front Street, informed the Carlisle Police Department that a black male had just been admitted for a stab wound to his right, upper thigh. Police responded to the Harrisburg

---

[1] **See** 18 Pa.C.S. §§ 2502(c), 306 (accomplice liability); and 18 Pa.C.S. §§ 3701(a)(1)(iv), 903 (criminal conspiracy), respectively.

Hospital and determined that the male was driven to the Hospital in a dark-colored Kia by Robert Askew. Police also identified the black male who was admitted to the hospital for the stab wound as Christopher Williams. … Police seized the dark-colored Kia to undergo forensic analysis. … [Ultimately,] Christopher Williams was arrested and charged with [c]riminal [h]omicide in relation to the shooting death of Rhyhiem Hodge.

* * *

The dark-colored Kia that was recovered at the Harrisburg Hospital, which also met the description of the vehicle that [a witness] stated had sped away from the crime scene, was subsequently processed by the Carlisle Police Department[.] … Only a few specks of blood were found in the front area of the dark[-]color[ed] Kia which indicated to police that the front driver seat and front passenger seat had been occupied by other unknown individuals during the time of the robbery and shooting of Rhyhiem Hodge, which would have required Christopher Williams to get into the backseat of the vehicle as it sped away from the crime scene. Police also searched the Kia and recovered a Samsung Galaxy S7 cellular phone underneath the driver's seat. … Upon recovery of the cellular phone, police were able to access and conduct a cursory view of the contents therein. Based on the contents that were initially found on the cellular device[, which was a search initially conducted without a warrant], police established that the Samsung Galaxy S7 phone was used by Tyrale "Rell" Hill-Price and was registered through Spring Corporation to Hill-Price's girlfriend, Fana Holton. Police also established the phone number associated with the Samsung Galaxy S7 was (757) [***]-0920. Furthermore, police learned that the dark-colored Kia was a rental vehicle owned by Enterprise Rent-A-Car. The Kia was ultimately rented by Lakeesha Mason in early November 2017, at an Enterprise rental location in Swatara Township, just outside Harrisburg. Lakeesha Mason in turn loaned the dark-colored Kia to Layton Potter.

* * *

[In exchange for drugs, Potter allowed drug dealers to use this vehicle. Potter loaned the Kia to Williams for heroin and crack cocaine.]

* * *

[Having been childhood friends, Hill-Price had known one of the inhabitants of the apartment, Dustin "Dash" Morell. Morell and

Hodge were drug-selling business partners. Hill-Price was the main supplier of Morell's cocaine. Hill-Price's position as supplier meant that he knew the amount of drugs and cash that were in the apartment and further was aware of the apartment's layout. Morell was not present during the shooting, a fact Hill-Price knew given that the two exchanged text messages on the day of the shooting.]

* * *

[Police officers sought and obtained several search warrants related to the cell phone.] A further analysis of the contents on the Samsung Galaxy S7 found in the dark-colored Kia underneath the driver's seat revealed that Tyrale Hill-Price was in possession of this phone leading up to and during the robbery and shooting death of Rhyhiem Hodge on November 12, 2017. Police were able to extract a series of text messages in which Tyrale Hill-Price clearly identified himself[.] …

* * *

In addition to the text messages which identify Tyrale Hill-Price, several text messages were extracted from the Samsung Galaxy S7 which indicated Hill-Price's motive to rob Rhyhiem Hodge on November 12, 2017[.] …

* * *

Police were able to obtain cellular tower location information for the phone number associated with the Samsung Galaxy S7 – (757) [***]-0920. Using the cell phone records for this particular number as well as an FBI program known as CASTviz, police were able to map the cellular tower locations on November 12, 2017. These cellular tower locations show this number hitting off towers from Harrisburg to Carlisle just prior to the robbery and shooting death of Rhyhiem Hodge and then hitting off towers from Carlisle back to Harrisburg immediately after the incident. Police were able to determine that the phone number associated with Tyrale Hill-Price had identical tower hits in Carlisle on the date and time of the robbery and shooting death of Rhyhiem Hodge. …

* * *

Detective Antanina Klinger, who also assisted with this investigation, testified that the Samsung Galaxy S7 was an Android phone which utilized Google software. Detective Klinger was able to determine that there was a Gmail account associated with the phone – olhead3@gmail.com that belonged to Tyrale Hill-

Price. This enabled her to obtain information from Google regarding the precise location of the phone on November 12, 2017, through cell tower location, WiFi location, and/or GPS coordinates. The records provided by Google allowed her to pinpoint the exact location of the Samsung Galaxy S7 at the time of the robbery and shooting death of Rhyhiem Hodge. On November 12, 2017, at 3:11 p.m., based on WiFi location, the phone was located at West Locust Avenue and Governor F.R. Shunk Avenue, the alley behind 278 West North Avenue. This is the exact location where the dark-colored Kia was parked that the bleeding Christopher Williams jumped into before it sped away from the crime scene. This is also where Christopher Williams' blood trail abruptly ended.

* * *

[In conclusion:] Christopher Williams, Tyrale "Rell" Hill-Price, and Cordae "Cdae" Jones jointly agreed to facilitate the [r]obbery of Rhyhiem Hodge with the hopes of obtaining a substantial amount of money and/or drugs. On the date November 12, 2017, during the commission of the underlying [f]elony [r]obbery, Christopher Williams shot and killed Rhyhiem Hodge using a 10 millimeter handgun. …

Although, the evidence clearly showed that Christopher Williams was the individual who pulled the trigger which ultimately ended the life of Rhyhiem Hodge, [Hill-Price] … aided in the perpetration and planning of the robbery[.] …

Grand Jury Indictment, 12/4/19, at 2-22 (unpaginated) (record citations and footnotes omitted; portions summarized for purpose of brevity).

Following his formal arraignment and as stated, *supra*, Hill-Price entered into a guilty plea for two offenses: (1) third-degree murder as an accomplice; and (2) criminal conspiracy to commit robbery. On April 9, 2021, Hill-Price was correspondingly sentenced to twenty to fifty years of incarceration. Hill-Price did not file a direct appeal from this aggregate sentence.

On June 1, 2021, Hill-Price filed a *pro se* PCRA petition. Correspondingly, PCRA counsel was appointed, which resulted in the filing of an amended PCRA

petition. Paralleling the issues now argued in the present appeal, that amended petition claimed that Hill-Price received ineffective assistance of plea counsel because counsel never filed a motion to suppress evidence related to the cell phone that was recovered in the Kia.

The PCRA court held an evidentiary hearing, which involved the testimony of plea counsel, Detective Klinger, and Hill-Price. During the hearing, Hill-Price stated that, although the cell phone was registered in his girlfriend's name, he had received it from her as a gift. Moreover, Hill-Price testified that he had inadvertently misplaced the cell phone instead of having voluntarily abandoned it. Separately, plea counsel, *inter alia*, conveyed that a motion to suppress would have not had any great chance of success because of Hill-Price's lack of having an expectation of privacy in the phone, the fact that Hill-Price appeared to have abandoned the device, which was itself in an abandoned vehicle, and that evidence of Hill-Price's involvement connecting him to the vicinity of the killing would have been inevitably discovered. Ultimately, Hill-Price indicated that he relied on counsel when he decided to plead guilty. After the hearing, the court dismissed Hill-Price's PCRA petition.

From this dismissal, Hill-Price filed a timely notice of appeal. The relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and as such, this appeal is ripe for review.

On appeal, Hill-Price presents four issues for review:

1. Does the record support the PCRA court's finding that Hill-Price

abandoned his cell phone?

2. Does the record support the PCRA court's finding that Hill-Price had no expectation of privacy in the recovered cell phone?

3. Did the PCRA court abuse its discretion in finding that, following the initial warrantless search of the cell phone, the subsequent searches were nevertheless legal based on the inevitable discovery doctrine?

4. Was Hill-Price prejudiced by his plea counsel's advice regarding counsel's lack of having filed a motion to suppress?

*See* Appellant's Brief, at 4.

Preliminarily, we note that this Court's review of an appeal stemming from the denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Mitchell*, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

Implicit in all four of Hill-Price's issues is the notion that, but for counsel's advice to him regarding the likelihood of a suppression motion's success, he would not have agreed to a plea deal. Accordingly, Hill-Price is asserting an ineffective assistance of counsel claim. *See* Appellant's Brief, at 13 ("[Hill-Price] is alleging that his decision to plead guilty was based upon [plea counsel's] statements to him that [Hill-Price] did not have a basis to file

a motion to suppress any or all evidence obtained as a result of the initial unconstitutional search of [his] cell phone.").

This Court presumes counsel's effectiveness. *See Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). As such, to surmount this obstacle, a petitioner must demonstrate that: (1) his underlying claim has arguable merit; (2) counsel lacked a reasonable basis for its actions or omissions; and (3) the petitioner resultantly suffered actual prejudice. *See Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). When the allegation of ineffectiveness relates to the petitioner's entry of a guilty plea, "actual prejudice" requires the petitioner to prove that there was a reasonable probability that but for counsel's error, he would have insisted on going to trial. *See Commonwealth v. Pier*, 182 A.3d 476, 479 (Pa. Super. 2018). The failure of a petitioner to meet any one of these three prongs is fatal to an ineffective assistance claim. *See Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

Hill-Price's first three averments fall under the auspice of the "arguable merit" component of the ineffective assistance test. Taking the first two in tandem, Hill-Price asserts that, juxtaposed against officers finding the cell phone in the Kia, "[h]is testimony clearly demonstrated that he did not voluntarily discard, leave behind, or otherwise relinquish his expectation of privacy interest in the cell phone." Appellant's Brief, at 14. Therefore, Hill-Price did not abandon the cell phone and, too, because he "was the primary user of the phone," *id*., at 15, he had a continuing expectation of privacy in that phone, notwithstanding the fact that the phone was registered under his

- 8 -

girlfriend's name. As such, police officers unlawfully accessed his cell phone when they obtained "the phone number belonging to the phone, the model number of the phone, and the IMEI for the phone," Trial Court Opinion, 9/1/22, at 7, without having first applied for a warrant.

The court found plea counsel's testimony at the PCRA hearing to be "entirely credible[.]" *Id*., at 12 (noting, further, that plea counsel had handled hundreds of criminal cases). Therein, plea counsel indicated that it was part of Williams's plea agreement that he was required to testify against Hill-Price. *See* PCRA Hearing, 9/24/21, at 8. However, plea counsel agreed that the cell phone "played a large part[]" in the case against his client. *Id*.

Plea counsel concluded that a suppression motion would have lacked merit and, had counsel filed such a motion, the Commonwealth would have taken "any plea offers off the table." *Id*., at 24, 52 (establishing, too, that plea counsel attempted to use the threat of filing a suppression motion as leverage in plea negotiations). If Hill-Price had gone to trial, he "was facing life" imprisonment. *Id*., at 63. Plea counsel thoroughly discussed the potential suppression of the cell phone with Hill-Price, and after a lengthy discussion, Hill-Price accepted plea counsel's legal analysis and decided to accept the plea deal. *See id*., at 26, 58.

In finding that a suppression motion would not have been meritorious, the PCRA court ascertained that police officers would have been able to obtain a search warrant for the cell phone irrespective of the information that was found in the initial warrantless search. *See* Trial Court Opinion, 9/1/22, at 15.

In addition, Hill-Price would not have been able to demonstrate a privacy expectation in the cell phone and, too, effectively abandoned the device. **See id**. Moreover, the court found plea counsel's additional rationale for not filing a suppression motion to be reasonable: "pursuit of such a motion would have foreclosed the possibility of a negotiated plea in a case where a sentence in lieu of a plea bargain would have been life imprisonment, and where the suppression of the evidence at issue [given Williams's potential testimony] would by no means have assured [Hill-Price] of an acquittal." **Id**.

As to the issue of abandonment, "[g]enerally, the Fourth Amendment requires that law officers obtain a warrant before they intrude into a place of privacy; however, an exception to the warrant requirement exists when the property seized has been abandoned." **Commonwealth v. Kane**, 210 A.3d 324, 330 (Pa. Super. 2019) (citation omitted). "[T]o prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest." **Commonwealth v. Dowds**, 761 A.2d 1125, 1131 (Pa. 2000). Stated differently, "no one has standing to complain of a search or seizure of property that he has voluntarily abandoned." **Commonwealth v. Shoatz**, 366 A.2d 1216, 1220 (Pa. 1976).

In further expounding upon abandonment, our Supreme Court has defined it as "primarily a question of intent and may be inferred from words spoken, acts done, and other objective facts." **Dowds**, 761 A.2d at 1131. "All

relevant circumstances existing at the time of the alleged abandonment should be considered." ***Shoatz***, 366 A.2d at 1220. "The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." ***Id***.

In addition to the question of abandonment, to have success on a suppression motion, Hill-Price was required to demonstrate a privacy interest in a cell phone that was not in his name. A defendant "must demonstrate that he held such a privacy interest which was actual, societally sanctioned as reasonable, and justifiable in the place invaded that the warrantless entry of the police violated his right under the Constitution of this Commonwealth … to be secure against unreasonable searches and seizures." ***Commonwealth v. Peterson***, 636 A.2d 615, 617 (Pa. 1993) (citations omitted; formatting altered).

We emphasize that, to the extent either carries any validity, Hill-Price's arguments as to the issues of abandonment and cell phone-related privacy interests are substantially undeveloped. Each discrete section is one page in length and features only one-to-two pieces of authority that are themselves cursory rule statements. Furthermore, Hill-Price merely highlights his own self-serving testimony wherein he stated "that he did not voluntarily leave the cell phone behind but instead inadvertently misplaced it" and, also, "that the

phone was his[.]" Appellant's Brief, at 14-15 (record citations omitted).

In its order dismissing Hill-Price's petition, the court held that:

a suppression motion would have failed on the basis that [Hill-Price] would not have been able to establish standing or an expectation of privacy in the cell phone, nor has he successfully demonstrated in these proceedings that he could prove either. Police located the cell phone in a vehicle outside a hospital where one of [Hill-Price's] co-defendants was being treated for stab wounds after fleeing the scene of the homicide. [Hill-Price] was not present with the phone. [Hill-Price] had no expectation of privacy in the vehicle itself. [Hill-Price] was not present in or around the vehicle at the time police encountered it at the hospital. [Hill-Price] did not own the vehicle and had no apparent permission to use or occupy the vehicle, which was an Enterprise rental, rented to a woman of unknown relation to the three co-defendants and with no ties to the homicide, who reported the vehicle missing in Dauphin County. [Hill-Price] told police following the homicide that his cell phone, the one at issue here, was stolen, though he did not remember how it was stolen, presented varying stories about when the cell phone was stolen, and maintained that it was not in his possession at the time of the homicide, significantly evidencing an attempt to distance himself from the cell phone. Finally, [Hill-Price] did not own the phone, which instead was registered to and controlled by his then-girlfriend.

Order of Court, 6/22/22, at 2.

Other than general assertions to the contrary, and despite it being his burden to prove, Hill-Price has simply failed to demonstrate that there is merit to the contention that he did not abandon the cell phone. Similarly, Hill-Price has not convincingly explained his alleged privacy interest in the recovered phone that was owned by another.

However, beyond the merits of the suppression motion, the *most* fatal component of Hill-Price's ineffective assistance claim is his complete lack of

refutation of plea counsel's additional reason as to why no suppression motion was filed:

> [Plea counsel] testified at the PCRA hearing that he firmly understood that filing a suppression motion would cease plea negotiations with the Commonwealth, which were already severely contentious in this case. [The PCRA court] note[s] that [Hill-Price] was facing life imprisonment and did in fact benefit significantly from the plea offer he accepted, which was a sentence of 15-40 years for [t]hird[-d]egree [m]urder and a consecutive 5-10 years for [c]onspiracy to [c]ommit [r]obbery. Secondly, plea counsel knew (and advised [Hill-Price]) that [Hill-Price] could still be convicted even if the motion was successful and fruits of the search were suppressed, as [Hill-Price's] co-defendant, who was present at the homicide and in the flight afterwards, *was in fact going to testify against* [*Hill-Price*] *and implicate him in the homicide as part of his own plea agreement*. Plea counsel testified that he believed filing a motion to suppress would have been much more damaging than helpful in effectuating [Hill-Price's] interests[.]

***Id***., at 3-4 (record citations omitted; emphasis in original).

As Hill-Price has made no showing *whatsoever* that serves to contest the reasonableness of plea counsel's decision, an essential component in demonstrating ineffective assistance of counsel, we find that he has failed to prove that he suffered from ineffective assistance. Specifically, even if the suppression motion would have been successful and all of the information extracted from the cell phone would have been suppressed at trial, Hill-Price provides no acknowledgment of the impact that Williams's testimony would have had against him nor does he discuss the determination by the court that he received a tangible benefit, i.e., a sentence reduction, through his assent to the plea agreement, something that, in accordance with plea counsel's

testimony regarding the Commonwealth's plea offer, would not have happened had the suppression motion been filed. Consequently, in failing to contradict his plea counsel's express reasoning, Hill-Price never provided any evidence that his counsel's decision to not file a suppression motion was unreasonable. Therefore, Hill-Price is not entitled to relief in this appeal, and we affirm the order dismissing his PCRA petition.[2]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/2023

---

[2] Given our determination that Hill-Price failed to demonstrate that his plea counsel did not have a reasonable basis in failing to file a suppression motion, we express no opinion on the merits of Hill-Price's third claim, which contests the PCRA court's determination that the inevitable discovery doctrine applied. Specifically, the court concluded that police officers would have ultimately obtained the same information gleaned from a subsequent warrant-based search even in the absence of the initial warrantless search of the cell phone. *See* Order of Court, 6/22/22, at 1 (finding that the contested information acquired in the initial search was "superfluous identifying information and made no contribution to whether search warrant affidavit contained facts amounting to probable cause.").